USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/12/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LB and DB, on behalf of their minor son, PB,

                    Plaintiffs,

-against-

PAUL S. HINES AND ANN H. HINES,

                    Defendants.

No. 15-cv-5238 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiffs, LB and DB, on behalf of their minor son, PB ("Plaintiff" or "PB"), commenced the instant action against Defendants Paul S. Hines ("Paul Hines") and Ann H. Hines ("Ann Hines") (collectively, "Defendants"), asserting, *inter alia*, claims sounding in sexual battery, intentional infliction of emotional harm, and fraudulent conveyance. Plaintiff alleges that on or about October 13, 2013, Defendant Paul Hines engaged in sexual conduct with PB, a minor.

    Following joinder of issue, Plaintiffs moved for partial summary judgment, pursuant to Fed. R. Civ. P. 56, on the issue of liability for PB's sexual battery claim, and for a determination that he is entitled to punitive damages. On April 10, 2018, this Court issued an Opinion, granting Plaintiff's Motion for Partial Summary Judgment on both issues. (ECF No. 41.)

    Presently before the Court is Plaintiffs' second Motion for Partial Summary Judgment on Plaintiff's Third and Fifth Claims for Fraudulent Transfer under New York Debtor Creditor Law Sections 273 and 276. (ECF No. 46.) Specifically, Plaintiffs request an Order: (a) granting their motion for partial summary judgment as to Plaintiffs' Third and Fifth Claims for Fraudulent Transfer under D.C.L. §§ 273 and 276 against both Defendants, (b) holding Defendants liable for such claims, (c) ordering Ann Hines to reconvey a one-half interest in the Property back to Paul

1

Hines, (d) awarding attorney's fees, and (e) granting such other and further relief as the Court deems just and proper. (*Id.*) For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

The Court presumes familiarity with the general background of this case, which it articulated in its previous Opinion. The following additional facts are relevant to the instant Motion and are derived from the parties' respective 56.1 statements and the relevant exhibits attached thereto. (*See* Plaintiff's 56.1 Statement, ECF No. 48; Defendants' 56.1 Statement, ECF No. 52-1.)

Paul Hines committed sexual battery against PB on or about October 13, 2013. This happened in New York at PB's home. PB suffered injury in New York, and PB's underlying claim for sexual battery arose under New York law. (Def. 56.1 ¶¶ 1, 3; Pl. 56.1 ¶¶ 1, 3.)

By Deed dated and executed on February 25, 2014, after Paul Hines was arrested and while his criminal case was pending, Paul Hines transferred his interest in his home ("Property" or "Property Interest" or "Property Transfer") to his wife, Ann Hines. (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.) The parties dispute whether or not Paul Hines received consideration for it. (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.) As to *why* he transferred his Property Interest to his wife, Paul Hines testified as follows:

> Q. Why did you make this transfer to your wife?
>
> A. The reason for it, was that in February, I had no idea what my future is going to be. Whether I was going to be in jail the rest of my life; what was going to transpire. All the legal situations were totally up in the air, and my wife had virtually nothing. I – the only thing was half-the-house. And I – my concern was that if I ended up going to jail, the reality is that her life would be -- is already complicated, because of my actions. And it seemed to be only fair to give up the house to her, because she had nothing else.
>
> Q. And did you have conversations with her prior to this?
>
> A. Just a short one.
>
> Q. And what was -- what was the sum and substance of that conversation?

> A. Sum and substance was she said, "What about the house?" I said, "I'll be glad to give it to you. It's the least I can do." And that was it.
>
> ***
>
> Q. You mentioned, a couple of questions ago, that the legal situations were up in the air, something like that. Do you remember saying that?
>
> A. Yes.
>
> Q. Okay. What did you mean by that?
>
> A. I mean that, nothing had been resolved, because of the incident with PB. So, at that point, I had no knowledge in terms of what my future was that.
>
> ***
>
> Q. So was part of your thinking that you wanted your wife to have money if you were in prison, or have additional assets, because you were in prison and didn't have a job?
>
> A. I wanted her life to be as free from encumbrances because of my actions.
>
> ***
>
> Q. And you mentioned encumbrances; what kind of encumbrances?
>
> A. I didn't mean that. I meant just for her life to be free of anything.

(Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4) (citing DeOreo Decl. Ex. E, at 130-133.)

Paul Hines also testified that, at most, he received $1 as compensation for transferring this Property Interest:

> Q. What did you get in return for your transfer of the house, your portion of the house, to your wife?
>
> A. I think we paid a dollar or something like that, and that was it.
>
> Q. So that's all that you got – got back?
>
> A. That's correct.
>
> Q. Did she physically give you a dollar, or was it just on the paper, that it was a dollar?

3

A. I don't recall.

(Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5) (citing DeOreo Decl. Ex. E, at 139.)

Ann Hines similarly testified that she paid him $1, but that they did not actually exchange currency. (Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.) Additionally, she testified that her husband transferred his half of the Property Interest to her on advice they received from their attorney. (Def. 56.1 ¶ 8).

Paul and Ann Hines were still married at the time of the Property Transfer. But the parties dispute whether their marital status implies that they had a close relationship at the time. Similarly, while the parties agree that Paul Hines' testimony reflected that real estate was his only asset, they dispute whether his testimony reflected that the *reason* he transferred his Property Interest in this home was because of that. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.)

Prior to the Property Transfer, Defendants jointly owned the Property, and each had a one-half interest. Paul Hines also testified that he retired from his job in 2013, after his arrest but before the Property Transfer, and he only receives $3,000 a month from his pension. Paul Hines lived in the Property until his probation officer directed him to move out. Paul Hines was not sentenced to probation until September 2, 2014. (Def. 56.1 ¶¶ 9-12; Pl. 56.1 ¶¶ 9-12.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013).

A court should grant summary judgment when a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that

party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). But the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The Court considers facts that are admissible in evidence. *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997). A party must support its position by citing to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations admissions, interrogatory answers, or other materials. FRCP Rule 56 (c)(1). Affidavits may be used to support or oppose summary judgment if the Affidavit is "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4). *See also*, *DiStiso v. Cook*, 691 F.3d 226, 230 (2d. Cir. 2012).

## DISCUSSION

Plaintiffs claim that Paul Hines' transferring his Property to Ann Hines was a fraudulent transfer under both New York D.C.L. Sections 273 and 276. The parties do not dispute that these provisions of the D.C.L. apply to this case because Plaintiff's underlying claim for sexual battery

5

arose in New York at PB's home, PB suffered his injury in New York, such claim arose under New York law, and PB resides in New York. (Pl. Mem. at 3; Def. Mem. at 2.) Therefore, the Court addresses each provision in turn.

I. **New York D.C.L. Section 273**

D.C.L. § 273 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." The Second Circuit has instructed that two elements must be satisfied for purposes of D.C.L. Section 273. First, the transfer must have been made without fair consideration, and second, the transferor must be found insolvent or to have been rendered insolvent by the transfer in question, D.C.L. Section 273 is applicable. *Kim v. Ji Sung Yoo*, 2018 WL 1871177, at *8 (S.D.N.Y. 2018); *McCarthy v. Estate of McCarthy*, 145 F.Supp. 3d 278, 285 (S.D.N.Y. 2015).

Plaintiffs argue that both elements are satisfied here. Defendants, however, argue that there are material issues of fact regarding both. The Court addresses each element in turn.

A. **Consideration**

The Court agrees with Plaintiffs that Ann Hines' payment of $1 for the Property transfer is not sufficient consideration. As relevant to DCL Section 273, "fair consideration" is defined by DCL Section 272, which provides:

> Fair consideration is given for property, or obligation: (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272. "[F]air consideration has two components—the exchange of fair value and good faith—and both are required." *In re Khan*, No. 10 Civ. 46901, 2014 WL 10474969,

6

at *8 (E.D.N.Y. Dec. 24, 2014) (quoting *SEC v. Universal Exp., Inc.*, 2008 WL 1944803, at *5 (S.D.N.Y. Apr. 30, 2008).

Here, the Court finds neither. While Plaintiffs have not provided proof of exactly how much the Property was worth, they do provide evidence that according to Vision Government Solutions for the City of Danbury, the home was appraised as having a value of $236, 800. (*See* DeOreo Reply Dec., Ex K, ECF 50-2.) This reflects that it is worth more than $1.

Additionally, Paul Hines' testimony itself reflects that the reason he transferred the Property was because he believed it had enough value to be able to support his wife financially in a meaningful way. (*See* DeOreo Decl. Ex. E, at 130) ("…my wife had virtually nothing. I – the only thing was half-the-house. And I – my concern was that if I ended up going to jail, the reality is that her life would be -- is already complicated, because of my actions. And it seemed to be only fair to give up the house to her, because she had nothing else.")

Such testimony reflects that Paul Hines transferred this house because the house had value and would therefore give his wife more assets than what she already had—which he described as "virtually nothing." Accordingly, the Court finds that Plaintiffs have met their burden of establishing that the value of the property exceeded the $1 she paid him, and therefore finds the $1 consideration was not an exchange of fair value.

Second, regarding Paul Hines' lack of good faith, the Court finds it evident from the timing of his transfer that he lacked good faith. Paul Hines transferred the property after he was arrested and while his criminal case was pending. Such timing reflects a lack of good faith. *See e.g., In re Manshul Const. Corp*, No. 96B44079, 2000 WL 1228866, at *53 (S.D.N.Y. 2000) (finding that because, at the time of the transfers, the defendant was under criminal investigation and faced

claims by subcontractors, defaults, and threats of default on its projects, his transfers were not made in good faith). Accordingly, the Court finds that this transfer was done without consideration.

### B. Insolvency

Turning to insolvency, the "element of insolvency is presumed when a conveyance is made without fair consideration…'" *Kim*, 2018 WL 1871177; *In re Manshul Const. Corp*, 2000 WL 1228866, at *53. Here, as previously discussed, Paul Hines conveyance of the Property to his wife was made without fair consideration. Therefore, the Court may presume that he was insolvent.

Further, the DCL defines insolvency as follows: "A person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his *probable* liability on his existing debts as they become absolute and matured." DCL § 271." (emphasis added). Here, although Defendants correctly note that Paul Hines did not have any specific amount of liability related to this lawsuit as his criminal investigation was still underway, the statute bases insolvency on "probable liability" (*i.e.* anticipated liability) and not "absolute liability" at the moment of transfer.

Based on the nature of the criminal investigation, even if Paul Hines could not predict what his future debts would be, he was on notice that he might have to pay *some* money in connection with the conduct for which he was being investigated. And he admitted that, as far as his assets, "the only thing was half-the house…" Even if one deems this statement ambiguous, Paul Hines admitted that he had no debts, he had junked his car earlier in the year, and that his only income was a small some of money in his IRS and half of his pension, (*see* DeOreo Decl. Ex. E, at 54, 133-39), none of which can be used to satisfy debts.

Therefore, the Court finds that Paul Hines fraudulently transferred his Property Interest to his wife without consideration, while insolvent, in violation of DCL § 273.

## II. New York D.C.L. Section 276

D.C.L. § 276 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." In that regard, "[f]or [a] plaintiff to prevail on its D.C.L. § 276 claim, it must prove, by clear and convincing evidence: 1) a conveyance; 2) made with actual intent to defraud.

Such intent may be inferred from the circumstances surrounding the transfer." *Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 WL 1888716, at *6 (S.D.N.Y. Aug. 16, 2002), *aff'd*, 74 F. App'x 152 (2d Cir. 2003). Further, Plaintiffs may establish actual intent to defraud through the "badges of fraud":

> Because of the inherent difficulties in proving fraudulent intent, however, such intent may be inferred from the existence of certain "badges of fraud." Among these "badges" are: 1) inadequacy of consideration received in the allegedly fraudulent conveyance; 2) a close relationship between the transferor and the transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; and 5) retention of control of the property by the transferor after the conveyance.

*Id.*, at *5.

Summary judgment is appropriate to a plaintiff where there is no issue of material fact as to whether such badges of fraud or other evidence establish the claim. *See Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003). Because there is no dispute that a conveyance was made from Paul to Ann Hines, the Court first addresses why Plaintiffs are "present or future creditors" under the statute and then assesses whether Plaintiffs have proffered sufficient evidence of actual intent.

9

### A. Plaintiffs' Creditor Status

To begin, Defendants do not contest that due to the fact that PB was a victim of Paul Hines' sexual assault as of October 2013, PB was a "creditor" of Hines at the time of the February 25, 2014 Property Transfer. (*See* Pl. Mem. at 4.) The Court therefore deems this argument abandoned. In any event, it finds Plaintiffs' position correct. *See Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006) ("Under New York's broad definition of 'creditor,' one who has a right to maintain a tort action but has not recovered judgment at the time of the transfer is a creditor and 'it is now accepted that the relationship of debtor and creditor [in tort cases] arises the moment the cause of action accrues.'")(citations omitted); *In re Bayou Grp.*, LLC, 439 B.R. 284, 297–98 (S.D.N.Y. 2010); *Howland v. Resteiner*, No. 07 CV 2332, 2008 WL 1740531, at *3 (E.D.N.Y. Apr. 10, 2008).

### B. Direct Proof of Actual Intent to Defraud

Plaintiffs next argue that they have direct and clear and convincing evidence of Defendants' intend to defraud. (Pl. Mem. at 7.) This is so, they argue, because "Paul Hines testified that the reason he transferred his one-half interest in the Property was to protect all of the Property, now solely owned by Ann Hines, from the financial consequences of the incident with PB." (*Id.*) Defendants disagree. They believe that because, at the time of the Property Transfer, Hines had not been charged by or convicted in any criminal court of law for the crime alleged against him, he had no actual knowledge that a civil judgment could be entered against him in relation to the alleged sexual battery. (Def. Mem. at 4.)

The Court agrees with Plaintiffs. During his deposition, Paul Hines testified as follows:

Q. Why did you make this transfer to your wife?

> A. The reason for it, was that in February, I had no idea what my future is going to be. Whether I was going to be in jail the rest of my life; what was going to transpire. All the legal situations were totally up in the air, and my wife had virtually nothing. I – the only thing was half-the-house. And I – my concern was that if I ended up going to jail, the reality is that her life would be -- is already complicated, because of my actions. And it seemed to be only fair to give up the house to her, because she had nothing else.
>
> Q. And did you have conversations with her prior to this?
>
> A. Just a short one.
>
> Q. And what was -- what was the sum and substance of that conversation?
>
> A. Sum and substance was she said, "What about the house?" I said, "I'll be glad to give it to you. It's the least I can do." And that was it.
>
> ***
>
> Q. You mentioned, a couple of questions ago, that the legal situations were up in the air, something like that. Do you remember saying that?
>
> A. Yes.
>
> Q. Okay. What did you mean by that?
>
> A. I mean that, nothing had been resolved, because of the incident with PB. So, at that point, I had no knowledge in terms of what my future was that.
>
> ***
>
> Q. So was part of your thinking that you wanted your wife to have money if you were in prison, or have additional assets, because you were in prison and didn't have a job?
>
> A. I wanted her life to be as free from encumbrances because of my actions.
>
> ***
>
> Q. And you mentioned encumbrances; what kind of encumbrances?
>
> A. I didn't mean that. I meant just for her life to be free of anything.

(DeOreo Dec., Ex. E, at 139, lines 13-22.) And as the Court previously explained, the only thing Paul Hines received in exchange for this Property Transfer was $1, which is not fair consideration.

11

The Court finds that Plaintiffs have established that Defendants made the Property Transfer to create a safety net from the financial consequences of Paul Hines sexually assaulting PB. First, Paul Hines knew that his future was up in the air, stating "I had no idea what my future is going to be. Whether I was going to be in jail the rest of my life; what was going to transpire." Similarly, he admitted that his legal situations were uncertain *and* that his wife had nothing: "*All the legal situations* were totally up in the air, and my wife had virtually nothing." (emphasis added). By stating these two facts in the same sentence, Paul Hines thus showss that he knew that there were potentially going to be *multiple* legal consequences and they would implicate finances.

He then stated that his concern was to ensure that his wife was able to retain the financial value of the house if he ended up in jail for the rest of his life. "And I – my concern was that if I ended up going to jail, the reality is that her life would be -- is already complicated, *because of my actions*." Thus, his testimony reflects that he was aware that there would be complicated legal consequences, including financial consequences, *because of* his sexual conduct with PB and the ensuing investigation.

Therefore, regardless of whether Paul Hines out of benevolence, wanted to ensure that his wife was financially secure, he clearly intended to transfer the property to her so that *she,* and not he, would be able to derive the financial fruits of it. One financial fruit would be for him to utilize his property to pay off his debts to his creditors. And as already discussed, PB was already a legitimate creditor at the time of the Transfer. Thus, the only reasonable conclusion from Paul Hines' testimony is that he consummated this transaction to hinder, delay, or defraud PB, who would otherwise be able to reach this asset—and instead wanted to preserve it for his wife.

As far as Ann Hines' direct intent to defraud PB, Defendants argue that there is no proof of her fraudulent intent because she testified that the couple completed the Property Transfer on

advice of their counsel. (*See* Def. Mem. at 4-7) (citing Riebling Dec, Ex. 1, at 23:18-24:8). But as Plaintiffs correctly note, just because Defendants got the idea to transfer the Property from an attorney does not mean that their intent in following through with the idea was not to still protect it from PB's potential future reach.

Again, both parties testified that they talked about transferring the Property Interest and about the possibility of Ann Hines selling it in order for her to accrue the financial benefits of it. (*See id*.). It is not necessary that they understood the exact type and scope of Paul Hines' potential financial liability. Paul Hines specifically testified that he "wanted [his wife's] life to be as free from encumbrances because of [his] actions." (See Pl. Mem. at 7) (citing DeOreo Dec., Ex. E at 130-33.) And although Paul Hines tried to clarify that all he meant by "encumbrances" was that he wanted her life to be "free of anything," (*see id*.), that does not diminish proof of his intent to protect Ann Hines of financial problems. Indeed, "anything" logically, and especially in this context, includes financial struggles derived from Paul Hines' debts to Plaintiffs.

The Court thus finds this argument insufficient to overcome the ample indications that the couple transferred Paul Hines' interest in the Property to Ann Hines for the purpose of allowing her to enjoy its financial benefits, instead of PB. Accordingly, the Court finds that Plaintiffs have sufficiently demonstrated that there is direct proof of the Defendants fraudulently transferring the Property Interest in order to protect it from PB's reach.

**C. Badges of Fraud**

Moreover, Plaintiffs established Defendants' actual intent to defraud by showing "badges of fraud." Under this theory, intent can be inferred based on:

> 1) inadequacy of consideration received in the allegedly fraudulent conveyance; 2) a close relationship between the transferor and the transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the

13

ordinary course of business; and 5) retention of control of the property by the transferor after the conveyance.

*Cadle Co.*, 2002 WL 1888716, at *5. The Court addresses each badge in turn.

The Court has already addressed the lack of fair consideration that Ann Hines provided for one-half of the Property Interest. Thus, this badge of fraud weighs in Plaintiffs' favor.

Second, regarding the close relationship between the transferor and the transferee, Plaintiffs argue that the fact that Defendants were still husband and wife at the time is sufficient to show a close relationship between them and to allow the Court to find the transfer presumptively fraudulent. (Pl. Mem. at 9.) Defendants disagree and argue that Defendants' marital status alone is insufficient to show their "close relationship." (Def. Mem. at 9.)

The Court agrees with Plaintiffs. Several courts have already held that "intrafamily transfers made without any signs of tangible consideration is presumptively fraudulent." *See Cadle Co. v. Newhouse*, No. 01 CIV. 1777, 2002 WL 1888716, at *7 (S.D.N.Y. Aug. 16, 2002), *aff'd*, 74 F. App'x 152 (2d Cir. 2003) (finding intra-family transfer between mother and son presumptively fraudulent without undergoing any analysis of emotional relationship between mother and son); *United States v. Alfano*, 34 F. Supp. 2d 827, 846 (E.D.N.Y. 1999) (finding intra-family transfer between parents and children for no consideration presumptively fraudulent without any analysis of emotional relationship between them).

That Defendants' relationship was strained by Paul Hines' conduct does not undermine the couple having a "close relationship." Legally, a husband and wife are still closely related. Further, Paul Hines' self-professed reason for the Transfer was at least in part due to concern for his wife's ability to monetarily support herself. This further undercuts any argument that, though married, they were no longer "close." Accordingly, this badge also weights in Plaintiffs' favor.

Third, the Court has already discussed its finding that Paul Hines was "insolvent" as contemplated by New York Debtor Creditor law at the time of the Transfer. (*See supra*, Part I.B.)

Fourth, regarding whether the Transfer was a "questionable transfer not in the ordinary course of business," Plaintiffs argue that there is no evidence on the record that this Transfer was in the ordinary course of business. (Pl. Mem. at 10.) Defendants do not address this argument in their brief, and therefore, the Court deems their argument abandoned and weighs this badge in Plaintiffs' favor as well.

Fifth, regarding whether Paul Hines retained control over the Property by virtue of his conveyance, it is undisputed that he continued living in the Property for at least six months after the Fraudulent Transfer, until his probation officer directed him to leave. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) Defendants argue that although it is undisputed that Paul Hines lived in his Property *until* he was directed to move out by his probation officer, that does not imply that he moved out *solely because* he was directed to move out by his officer.

Neither party offers any evidence to suggest that there was any other reason that Paul Hines moved out of his Property other than the instructions he received from his probation officer. Common sense dictate that if someone engages in a continual act until they are instructed by federal authorities to cease, and there is no other reason for their ceasing, they stopped at least in part because of that instruction.

But regardless of the possible nuanced reasons that Paul Hines may have had for finally leaving his Property, the fact remains that for at least six months after the Transfer, he continued living there, just as he had been before, and therefore remained in partial physical control of it. Hence, there is no triable issue of fact regarding control, and this badge weighs in Plaintiffs favor.

15

As the Court finds that the badges of fraud weigh in favor of finding actual intent to defraud Plaintiffs, the Court again finds that the Property Transfer was a fraudulent conveyance.[1]

### D. Attorney's Fees

Plaintiff lastly seeks attorney's fees pursuant to D.C.L. Section 276-a, which provides:

> *In an action or special proceeding brought by a creditor*, receiver, trustee in bankruptcy, or assignee for the benefit of creditors *to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent*, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, *the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor*, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

D.C.L. Section 276-a (emphasis added).

Here, because the Court finds that both Paul and Ann Hines acted with the requisite fraudulent intent in conveying Paul Hines' Property Interest to his wife, the Court may properly award Plaintiffs their reasonable attorneys' fees. *See Abbas Corp. (Pvt) Ltd. v. Michael Aziz Oriental Rugs, Inc.*, No. 14 CIV. 6771, 2018 WL 1779380, at *9 (S.D.N.Y. Apr. 3, 2018); *Perrone v. Amato*, No. CV 09-316, 2017 WL 2881136, at *40 (E.D.N.Y. July 5, 2017).

---

[1] It also finds the transfer presumptively fraudulent based on the timing and intrafamily nature of the transfer.

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for partial summary judgment is GRANTED. Because the Court finds that Paul Hines fraudulently transferred his property to his wife, Ann Hines, Ann Hines is directed to reconvey one-half of her Property Interest back to Paul Hines. In addition, Defendants are directed to reimburse Plaintiffs for their reasonable attorneys' fees. If, within 30 days hereof, the parties are unable to agree on the reasonable attorneys' fees due to Plaintiffs, they are directed to notify the Court in writing so that a hearing may be scheduled.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 46. This constitutes the Court's Opinion and Order.

Dated: July 12, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge